UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

BAYLESS EUGENE SULLIVAN,            )
                                    )
        *Plaintiff*,                )
                                    )
v.                                  )            No. 4:13-cv-57-HSM-SKL
                                    )
COMMISSIONER OF SOCIAL SECURITY,    )
                                    )
        *Defendant*.                )

## REPORT AND RECOMMENDATION

Plaintiff Bayless Eugene Sullivan ("Plaintiff") brought this action pursuant to 42 U.S.C.

§§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of

Social Security ("Commissioner" or "Defendant") denying his disability insurance benefits

("DIB") and supplemental security income ("SSI"). Each party moved for a judgment [Docs. 15

& 19] with supporting briefs [Docs. 16 & 20].[1] Plaintiff later filed an amended motion for

judgment [Doc. 22] with a supporting brief attached as an exhibit [Doc. 22-2].[2] For the reasons

---

[1] Plaintiff filed a motion to amend his original motion for summary judgment to correct a typographical error or errors [Doc. 17], which the Court granted [Doc. 18]. In the Court's Order granting Plaintiff's motion to amend [Doc. 18], the Court directed Plaintiff to file his amended motion within three days of the entry of the Order. More than six months later, Plaintiff still had not complied with the Court's Order, so the Court issued another Order [Doc. 21] directing Plaintiff to file his amended motion for summary judgment by December 3, 2014. Inexplicably, Plaintiff (or more accurately, Plaintiff's counsel) once again failed to comply with the Court's Order, as Plaintiff did not file an amended motion by the deadline. Plaintiff then late-filed an amended motion for summary judgment [Doc. 22] and attached an identical copy of the previously filed supporting brief as an exhibit [Doc. 22-2]. Plaintiff's counsel is forewarned that such disregard for the Court's Orders, which causes needless delay and wasted effort, may result in the imposition of appropriate sanctions.

[2] The Clerk is **DIRECTED** to **TERMINATE** Plaintiff's original motion for summary judgment [Doc. 15], as it has been superseded by Plaintiff's amended motion [Doc. 22].

stated below, I **RECOMMEND** that (1) Plaintiff's amended motion for summary judgment [Doc. 22] be **GRANTED IN PART** to the extent it seeks remand to the Commissioner and **DENIED IN PART** to the extent it seeks an award of benefits; (2) the Commissioner's motion for summary judgment [Doc. 19] be **DENIED**; and (3) the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).

## I. ADMINISTRATIVE PROCEEDINGS

Plaintiff initially filed his applications for DIB and SSI on November 9, 2009, alleging disability as of June 1, 2007 (Transcript [Doc. 12] ("Tr.") 77-80). Plaintiff's claim was denied initially and upon reconsideration, and he requested a hearing before the ALJ (Tr. 81, 86, 88, 90). The ALJ held a video hearing on September 27, 2011, during which Plaintiff was represented by an attorney (Tr. 38, 42). The ALJ issued an unfavorable decision on January 20, 2012, finding Plaintiff was not disabled because, although Plaintiff was not able to perform the full range of light work, the ALJ found that Plaintiff's additional limitations had little or no effect on the occupational base of unskilled light work, and thus the ALJ determined that a finding of "not disabled" was appropriate under the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App'x 2 ("Grids") (Tr. 35-47). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 1-5). Plaintiff timely filed the instant action seeking judicial review of the Commissioner's unfavorable decision [Doc. 2].

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was 30 years old on his alleged disability onset date, June 1, 2007 (Tr. 46). Plaintiff completed a ninth grade education (Tr. 56). He has past relevant work experience as a

factory laborer, lathe operator, quality control worker, and welder (Tr. 149, 159). Plaintiff's longest employment was as a lathe operator, in which he set up and operated lathe machines, and frequently carried 25 pounds of steel and occasionally carried up to 200 pounds of steel (Tr. 149, 160). Plaintiff stated that his most serious problem is his inability to interact with people, because he "[c]an't stand them" and "[c]an't be around a bunch of people," and even his own mother "get[s] on [his] nerves" (Tr. 56).

### B. Medical Records

Plaintiff included an extremely detailed summary of his medical records in his brief in support of his motion for summary judgment.[3] Defendant does not appear to dispute Plaintiff's recitation of his medical records. The parties' disagreement in this matter instead involves whether the ALJ appropriately evaluated the opinions of two consultative physicians and whether the ALJ should have called a vocational expert ("VE") to testify at the hearing regarding Plaintiff's non-exertional impairments and their limitations on his ability to work. Because Plaintiff's recitation of his medical records does not appear to be in dispute, only the portion of Plaintiff's medical records relevant to the parties' arguments will be addressed herein; the Court notes, however, that all relevant records have been reviewed.

### 1. Dr. Bilbrey

Plaintiff was evaluated by Dr. Roy Bilbrey, a licensed psychologist, in a consultative evaluation on September 22, 2011 (Tr. 640). The evaluation by Dr. Bilbrey was requested by Plaintiff (Tr. 640). In his report, Dr. Bilbrey noted that Plaintiff was able to complete the office

---

[3] Plaintiff devoted 24 pages of his brief to summarizing his medical records, out of a total of 29 pages. In addition to presenting very little valid argument to support his claims of error, Plaintiff's brief violates the 25-page limit for such briefs. E.D. Tenn. L.R. 7.1(b). The Court will nevertheless consider the arguments made in Plaintiff's brief; however, the Court warns Plaintiff's counsel that filings which do not comply with the local rules will not be accepted in the future.

form without any difficulty, and he noted that Plaintiff was appropriately dressed and groomed (Tr. 640). Dr. Bilbrey did note the significant scar on Plaintiff's left cheek and observed that Plaintiff had fine motor tremors (Tr. 640). During the evaluation, Dr. Bilbrey administered a clinical interview, a mental status exam, the Wechsler Adult Intelligence Scale-IV, the Wide Range Achievement Test-3, and the Thematic Apperception Test (Tr. 640).

During the clinical interview, Dr. Bilbrey found Plaintiff to be alert and oriented with spontaneous, relevant, and coherent speech; normal gait and ambulation; a self-reported depressed mood; a slightly dysphoric affect; adequate eye contact; a self-reported lack of hallucinations, delusions, or other thought disorders; no indication of any homicidal ideation; self-reported suicidal ideations several times per week, but also a self-reported lack of any plan to harm himself; some paranoid ideations that others will harm him; adequate memory for immediate, recent, and remote events; no difficulty concentrating; adequate judgment and reasoning; the ability to think abstractly; adequate stream of thought; adequate insight into his condition; and a self-reported difficulty sleeping (Tr. 641-42). Dr. Bilbrey found that Plaintiff participated in the evaluation process, understood the task of the evaluation, and had no difficulty concentrating during the evaluation (Tr. 643). Dr. Bilbrey found that Plaintiff was capable of relating to others and interacting and communicating effectively with them (Tr. 643). Additionally, Dr. Bilbrey found that Plaintiff had adequate judgment and reasoning to manage his own finances (Tr. 643).

Plaintiff's full scale IQ was 77 under the Wechsler Adult Intelligence test administered by Dr. Bilbrey (Tr. 643). Dr. Bilbrey noted that this score appears to underestimate Plaintiff's true level of intellectual functioning because the overall score was lowered by Plaintiff's score on the working memory subtest, which Dr. Bilbrey noted was likely due to his depressed mood

(Tr. 643). Dr. Bilbrey found Plaintiff's intellectual functioning to be in the low average range (Tr. 643). On the Wide Range Achievement Test-3, Plaintiff scored a 7th grade reading level and a 5th grade arithmetic level (Tr. 643). Dr. Bilbrey found these scores to be valid measures of his academic ability (Tr. 643).

Dr. Bilbrey stated in his report that Plaintiff had no trouble projecting onto the stimuli cards during the Thematic Apperception Test, and Dr. Bilbrey noted that some of Plaintiff's responses indicated depressed mood, chronic worrying, and interpersonal relationship difficulties (Tr. 644). Plaintiff's responses did not indicate psychotic thinking, however (Tr. 644).

Dr. Bilbrey also included a medical assessment of Plaintiff's ability to do work-related activities (mental) with his report (Tr. 650-52). In this assessment, Dr. Bilbrey opined that Plaintiff had a good ability to use judgment and maintain attention and concentration (Tr. 650). Dr. Bilbrey opined that Plaintiff had a fair ability to follow work rules, relate to coworkers, interact with supervisors, and function independently (Tr. 650). Dr. Bilbrey opined that Plaintiff had poor to no ability to deal with the public and deal with work stresses (Tr. 650). Dr. Bilbrey opined that Plaintiff had an unlimited or very good ability to understand, remember and carry out simple job instructions; a good ability to understand, remember, and carry out detailed, but not complex, job instructions; and a fair ability to understand, remember, and carry out complex job instructions (Tr. 651). Dr. Bilbrey further opined that Plaintiff had a good ability to maintain his personal appearance; a fair ability to behave in an emotionally stable manner and demonstrate reliability; and poor to no ability to relate predictably in social situations (Tr. 651). Dr. Bilbrey found that Plaintiff was able to manage his finances in his own best interest (Tr. 652).

Dr. Bilbrey diagnosed Plaintiff with major depressive disorder, single episode; moderate panic disorder, without agoraphobia; hypertension; diabetes; pancreatitis; fatty liver; neuropathy;

hepatitis C; sleep apnea; status post fractured clavicle; status post gunshot wound; unemployed; primary support group problems; social environment problems; and noted that Plaintiff's current GAF score was 50 (Tr. 644).

### 2. Dr. Blevins

Dr. Melvin Blevins examined Plaintiff on September 22, 2010 as part of a consultative examination (Tr. 425). During the examination, Dr. Blevins interviewed Plaintiff and noted Plaintiff's reported symptoms and history (Tr. 425-27). Dr. Blevins then performed a physical examination of each of Plaintiff's bodily systems (Tr. 428-29).

During his examination of Plaintiff's head, ears, nose, and throat, Dr. Blevins found that Plaintiff's pupils were markedly dilated but were equal and reactive (Tr. 429). Dr. Blevins found that Plaintiff's extraocular movements were intact and that Plaintiff had no icterus or nystagmus (Tr. 429). Dr. Blevins found that Plaintiff's tympanic membranes were clear and his hearing was grossly normal to spoken voice one-on-one in a closed room environment (Tr. 429). Plaintiff's nose and throat were clear. Dr. Blevins's funduscopic exam showed grade 1 atherosclerotic changes (Tr. 429). In examining Plaintiff's neck, Dr. Blevins found no adenopathy, thyromegaly, or bruits (Tr. 429).

Dr. Blevins examined Plaintiff's respiratory system and found that his breath sounds were moderately decreased with some scattered rhonchi, but there were no rales or wheezes (Tr. 429). In examining Plaintiff's heart, Dr. Blevins found sinus tachycardia, but Plaintiff's heart was otherwise normal (Tr. 429). Dr. Blevins examined Plaintiff's abdomen, which he found to be moderately obese and diffusely tender (Tr. 429). Dr. Blevins found that Plaintiff's liver edge was down one to two fingerbreadths, and found that Plaintiff's liver was firm and somewhat

tender (Tr. 429). Plaintiff's abdomen was soft with no masses, and his bowel sounds were active. Dr. Blevins found that Plaintiff had an umbilical hernia (Tr. 429).

Dr. Blevins examined Plaintiff's extremities, which were positive for clubbing (Tr. 429). Plaintiff had no edema and no evidence of chronic venous obstruction, arterial insufficiency, or recurrent ulceration (Tr. 429). Dr. Blevins found that Plaintiff's distal pulses were intact (Tr. 429). Plaintiff had tinea unguium of the toenails (Tr. 429).

Dr. Blevins also examined Plaintiff's musculoskeletal system, which Dr. Blevins found to be positive for Heberden's nodes (Tr. 429). Dr. Blevins found that Plaintiff's spinal configuration was grossly normal, with no noted muscular spasms (Tr. 429). While Plaintiff had some paralumbar tenderness, there was no spasticity or rigidness (Tr. 429). Dr. Blevins found that Plaintiff was able to make a fist, extend his fingers, and oppose his fingers to his thumb (Tr. 429). Plaintiff had full grip strength in both hands, and he had normal gait and station (Tr. 429). Plaintiff was able to get onto and off of the examination table, up from a chair, bend, squat, and arise without assistance (Tr. 429). Dr. Blevins also performed a range of motion test for Plaintiff, finding that Plaintiff's hips, knees, ankles, wrists, cervical spine, shoulders, and elbows all had normal ranges of motion (Tr. 432-33). Dr. Blevins found that Plaintiff's dorsolumbar spine had normal flexion, right lateral flexion, and left lateral flexion range of motion, but his dorsolumbar spine had reduced extension range of motion (Tr. 433).

During Dr. Blevins's examination of Plaintiff's neurological systems, he found that Plaintiff's cranial nerves C-II through C-XII were intact (Tr. 429). Plaintiff's deep tendon reflexes were 4/4 in both the right and left upper and lower extremities (Tr. 429). Plaintiff's straight leg raise was negative for both legs; his heel-to-toe gait was unsteady; his ability to stand on one leg at a time was intact (Tr. 429). Plaintiff was negative for Romberg's; his

proprioception was normal; his Tinel's sign was negative bilaterally; and he had a mild tremor in both upper extremities (Tr. 429).

After reviewing each of Plaintiff's bodily systems, Dr. Blevins issued his "impressions" (Tr. 431). Dr. Bilbrey opined that Plaintiff suffered from chronic bronchitis; tobacco abuse; HTN; type II diabetes; umbilical hernia; sleep apnea requiring CPAP; hepatitis C by history; pancreatitis; MS pain disorder; alcohol use syndrome; generalized anxiety with associated panic disorder; major depression with history of multiple suicide attempts, most recently a gunshot wound to the left face; history of pancreatitis requiring hospital admission; OA; and a mild tremor in both upper extremities of undetermined cause or significance (Tr. 431). Dr. Bilbrey opined that these diagnosed limitations would result in Plaintiff being able to occasionally lift less than 30 pounds; being unable to frequently lift any amount; being able to stand for less than three hours per day; and being able to sit for less than six hours per day (Tr. 431).

### C. Hearing Testimony

On September 27, 2011, the ALJ conducted a hearing in Plaintiff's case (Tr. 52-70). The ALJ was present in person in Knoxville, Tennessee, and Plaintiff and his attorney were present via video conferencing from Cookeville, Tennessee (Tr. 38). Plaintiff was the only witness to testify at the hearing. The Court has carefully reviewed the transcript of the testimony at the hearing, but it is not necessary to summarize the hearing transcript herein.

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, No. 12-4316, 2013

WL 5749156, at *9 (6th Cir. Oct. 24, 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks*

*v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)).

A claimant is disabled "only if his physical or mental impairment or impairments are of such

severity that he is not only unable to do his previous work, but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration determines eligibility for disability benefits by following a

five-step process.  20 C.F.R. § 404.1520(a)(4)(i-v).  The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009).  The claimant bears the

burden to show the extent of his or her impairments, but at step five, the Commissioner bears the

burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of

performing.  *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

### B.    The ALJ's Findings

At step one of the process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since June 1, 2007, the alleged onset date (Tr. 40).  At step two, the ALJ found Plaintiff had the following severe impairments: depression, right shoulder pain, organic brain syndrome secondary to suicide attempt (gunshot wound to the head), hypertension, pancreatitis, diabetes mellitus, hepatitis C, obesity, asthma, and anxiety (Tr. 40).  At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Tr. 42). Specifically, the ALJ considered the mental health disorder listings in 12.00 of the listings (Tr. 42-43).  The ALJ determined Plaintiff had the RFC to perform light work, except that he could not perform work requiring more than occasional overhead reaching with the left arm; should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; could perform simple, non-detailed tasks; should have only casual and infrequent contact with coworkers and the public; should receive direct and non-confrontational supervision; and should have only infrequent and gradually-introduced workplace changes (Tr. 43).   At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work (Tr. 46).  At step five, the ALJ noted that Plaintiff was a younger individual, 18-49, on the alleged onset date, had a marginal education, and was able to communicate in English (Tr. 46).  After considering Plaintiff's age, education, work experience, and RFC, and utilizing the Grids, the ALJ found there were jobs that existed in significant numbers in the national economy which Plaintiff could perform (Tr. 46-47).  These findings led to the ALJ's determination that Plaintiff was not under a disability at any time from June 1, 2007, the alleged onset through January 20, 2012, the date of the ALJ's decision (Tr. 47).

## IV.    ANALYSIS

As noted above, Plaintiff alleges the ALJ erred: (1) by failing to designate the weight given to the opinion of consultative psychologist Dr. Bilbrey and by failing to properly consider that opinion; (2) by failing to designate the weight given to consultative examiner Dr. Blevins and by failing to properly consider that opinion; and (3) by failing to call a VE to evaluate Plaintiff's non-exertional impairments and their limitations on his ability to work.  Each of Plaintiff's arguments will be addressed below.

### A.    Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence.  42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (internal citations omitted).  Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted).  If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971).  The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387.  The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the

11

Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B.      Designation of the Weight Given to the Opinions of Dr. Bilbrey and Dr. Blevins

Plaintiff's argument does not center on a treating physician's opinion about limitations but instead focuses on the opinions of two medical sources who each examined Plaintiff on a single occasion. Pursuant to 20 C.F.R. § 404.1527, the ALJ had to consider these opinions, but the ALJ was not bound by the findings in any one opinion. The opinions of examining physicians, unlike those of treating physicians, are "'entitled to no special degree of deference.'" *Cangialosi v. Comm'r of Soc. Sec.*, No. 13-10210, 2014 WL 1260711, at *5 (E.D. Mich. Mar. 27, 2014) (quoting *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)). Similarly, there is no requirement that the ALJ give good reasons for the weight afforded to the opinions of examining or consulting physicians who do not qualify as treating physicians. *Smith v. Comm'r of Soc.*

*Sec.*, 482 F.3d 873, 875-76 (6th Cir. 2007) ("the SSA requires ALJs to give reasons for only *treating* sources").

Dr. Blevins and Dr. Bilbrey were not treating physicians; instead, each examined Plaintiff only once. The ALJ made the following statements regarding her consideration of the opinions of Dr. Blevins and Dr. Bilbrey,:

> The functional assessment of Dr. Blevins, the physical consultative examiner, is accommodated by the residual functional capacity outlined above. Said assessment is more consistent with the overall medical evidence of record and the claimant's longitudinal treatment history. It is important to note that none of the claimant's treating physicians opined that the claimant was disabled due to disability impairments. The only other physical functional assessments of the claimant in the record are those of reviewing state agency positions, most who opined that the claimant was capable of a reduced range of medium exertion. Giving the claimant the benefit of the doubt, the undersigned adopted the more recent physical functional assessment of the state agency examiner, who opined that the claimant was capable of a reduced range of light exertion. Said assessment more than accommodates the objective and clinical evidence of record and is entirely consistent with the claimant[']s reported daily activities, outlined below.
>
> . . .
>
> Although the opinion of Dr. Bilbery [sic] was generated at the request of the attorney and in connection with an effort to generate evidence for the current appeal, the undersigned has considered and accommodated the opinion and global assessment functioning in the residual functional capacity outlined above.

(Tr. 44-45).

Plaintiff alleges that the ALJ failed to designate the amount of weight given to the opinions of Dr. Bilbrey and Dr. Blevins, and Plaintiff also argues that the ALJ erred in failing to make an RFC finding consistent with their opinions, as Plaintiff contends their opinions are

13

supported by substantial evidence in the record. Plaintiff's arguments with respect to each of these doctors will be addressed in turn.

### 1. Dr. Bilbrey's Opinion

Plaintiff argues the ALJ did not designate or specifically determine the amount of weight given to Dr. Bilbrey's opinion. Plaintiff argues that the ALJ's statement that she had "considered and accommodated the opinion and global assessment of functioning" in determining Plaintiff's RFC was insufficient [Doc. 22-2 at Page ID # 790]. Additionally, Plaintiff argues that the ALJ erred by including in Plaintiff's RFC determination that Plaintiff could perform simple, non-detailed tasks, could have casual and infrequent contact with coworkers and the public, and could be exposed to workplace changes so long as they were infrequent and gradual. Dr. Bilbrey opined that Plaintiff had no useful ability to interact with the public and no useful ability to deal with work stresses, and Plaintiff contends the ALJ erred because the ALJ's RFC finding does not accommodate the restrictions from Dr. Bilbrey's opinion. Plaintiff argues that Dr. Bilbrey's opinion was sufficiently supported by medical evidence, including Plaintiff's prior suicidal attempts and depression, as well as the symptoms Plaintiff had previously reported and complained about. Plaintiff further argues that the GAF score of 35 assigned by his case manager (Tr. 573) supports Dr. Bilbrey's opinion. Plaintiff concludes his argument by stating that the ALJ erred in rejecting Dr. Bilbrey's opinion, because even if the opinion was not entitled to controlling weight, the ALJ erred by failing to consider all of the required factors to determine the weight that should be given to the opinion.

In response, Defendant contends that the ALJ properly discounted Dr. Bilbrey's opinion that Plaintiff had poor to no ability to deal with the public, deal with work stresses, or relate

predictably in social situations. Defendant contends that the ALJ noted that Dr. Bilbrey's opinion also included that Plaintiff had a fair ability to relate to coworkers, interact with supervisors, function independently, and behave in an emotionally stable manner. Defendant notes that Dr. Bilbrey opined that Plaintiff had adequate judgment and reasoning, and that Plaintiff was capable of determining appropriate thoughts and actions. Defendant argues that the treatment records of Plaintiff's psychiatrist, Dr. Glenn Webb, also support discounting Dr. Bilbrey's opinion, as Dr. Webb noted that Plaintiff's reactions to stress were normal. Defendant also argues that Plaintiff's treatment for his mental conditions has been conservative, with no inpatient treatment or counseling for depression and anxiety, and only conservative treatment with psychotropic medications. Additionally, Defendant argues that Plaintiff's IQ score of 77 is not determinative of a mental limitation, as it is only a diagnostic tool that may be used to determine Plaintiff's diagnosis. Defendant argues that even Dr. Bilbrey noted that Plaintiff's true level of intellectual functioning was masked by his depression, and Dr. Bilbrey opined that Plaintiff's intellectual functioning was in the low average range. Defendant contends that this assessment of Plaintiff's intellect is supported by the report of Dr. Stephen Hardison, who also performed a consultative psychological examination of Plaintiff and who found Plaintiff to have low average to average intelligence. Defendant further contends that a GAF score is not entitled to any particular weight. Defendant argues that other evidence in the record indicates that Plaintiff's limitations were not as severe as Dr. Bilbrey opined, considering Plaintiff's activities of daily living, such as grocery shopping, household chores including yard work, and recreational activities such as hunting, fishing, caring for animals, and riding four-wheelers. Defendant therefore contends that Plaintiff's argument that the ALJ erred fails, as the ALJ's RFC determination was supported by substantial evidence.

Plaintiff's arguments essentially boil down to: (1) the ALJ erred by failing to specify the amount of weight given to Dr. Bilbrey's opinion; (2) the ALJ erred by giving insufficient weight to Dr. Bilbrey's opinion, as it was supported by substantial evidence; (3) the ALJ erred by issuing an RFC determination that was inconsistent with Dr. Bilbrey's opinion as to Plaintiff's limitations; and (4) the ALJ erred by failing to discuss all of the required factors when discounting Dr. Bilbrey's opinion. The Court notes that Plaintiff did not include any citation to case law or other authority in support of his arguments regarding the ALJ's treatment of Dr. Bilbrey's opinion.

First, as noted above, as an examining physician rather than a treating physician, Dr. Bilbrey's opinion is entitled to no specific weight. *Cangialosi*, 2014 WL 1260711 at *5 (quoting *Barker*, 40 F.3d at 794). The Court is unaware of, and Plaintiff has failed to provide, any authority stating that an ALJ must specify the amount of weight given to the opinion of an examining physician. Thus, Plaintiff's undeveloped claims that the ALJ erred by failing to assign a specific weight to Dr. Bilbrey's opinion or by failing to give enough weight to Dr. Bilbrey's opinion fail.

Next, regarding Plaintiff's argument that the ALJ erred by making an RFC determination that was inconsistent with Dr. Bilbrey's opinion about Plaintiff's limitations, the ALJ's RFC determination is supported by substantial evidence. The ALJ noted that she had "considered and accommodated" Dr. Bilbrey's opinion and global assessment of Plaintiff's functioning in making her RFC determination (Tr. 45). While the paragraph in the ALJ's RFC determination that specifically mentions Dr. Bilbrey is brief, the ALJ provides a more lengthy discussion regarding Plaintiff's mental health concerns in general, noting that Plaintiff's "benign clinical examinations, conservative treatment and reported daily and social activities" are inconsistent

with the mental disabilities claimed by Plaintiff (Tr. 45). The ALJ also considered reports of other psychologists as well as the overall medical evidence of record before finding that Plaintiff's "impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible . . . ." (Tr. 45). The ALJ explained that she was giving more weight to the opinion of Mr. Hardison, a psychological consultative examiner, and the mental functional assessments of the reviewing state agency psychologists because they were more consistent with the overall medical evidence of record, Plaintiff's longitudinal treatment history, and the claimant's reported daily and social activities (Tr. 45). Thus, while the ALJ was not required to give good reasons for discounting the opinion of Dr. Bilbrey, a non-treating physician, the ALJ did provide reasons that show the RFC determination is supported by substantial evidence, even though it is not consistent with Dr. Bilbrey's opinion. Plaintiff's claim here therefore also fails.

Finally, with regard to Plaintiff's claim that the ALJ erred by failing to consider each factor as required under 20 C.F.R. § 404.1527(d), the court notes that subsection (d) of this section of the Code of Federal Regulations discusses medical source opinions on issues reserved to the Commissioner and does not list factors to be considered in determining the weight to be given to an examining physician's opinion, such as that of Dr. Bilbrey. Subsection (c) of this section of the Code of Federal Regulations does list factors in determining the weight given to any medical opinion, stating that "we consider all of the following factors in deciding the weight we give to any medical opinion," including whether the medical source examined the claimant; whether a treating relationship existed; the length, frequency, nature, and extent of the treating relationship; whether evidence such as medical signs and laboratory findings supports the medical source opinion; whether the opinion is consistent with the medical record as a whole;

17

whether the medical source is specialized on the issues involved in the opinion. 20 C.F.R. § 404.1527(c). The Court notes that the language specifically states that the ALJ will consider, not provided detailed written analysis of, each of the factors. Here, there was no treating relationship between Plaintiff and Dr. Bilbrey; Dr. Bilbrey only examined Plaintiff once; and the ALJ found that other psychological opinions and assessments were more consistent with the medical record as a whole. Thus, Plaintiff's argument here fails as well.

For these reasons, I **FIND** that the ALJ properly considered and discounted Dr. Bilbrey's opinion in making the RFC determination.

### 2. Dr. Blevins's Opinion

Plaintiff alleges that the ALJ also erred by failing to designate the amount of weight given to the opinion of Dr. Blevins. Specifically, Plaintiff alleges that the ALJ did not state the specific weight given to Dr. Blevins's opinion, and rather stated only that "the 'functional assessment is accommodated by the residual functional capacity outline above.'" [Doc. 22-2 at Page ID # 791 (citing Tr. 44)]. Plaintiff provided an additional summary of Dr. Blevins's assessment, noting that Dr. Blevins found Plaintiff could occasionally lift less than 30 pounds, could not frequently lift any amount, could stand less than three hours per day, and could sit less than six hours per day [*Id.* at Page ID # 791]. Plaintiff argues that these limitations would preclude Plaintiff from performing light work, since a person has to be able to stand or walk 6 hours during the day and frequently lift at least ten pounds. Plaintiff also argues that these limitations would preclude Plaintiff from being considered capable of "performing a wide range of light work activity," since to be considered able to perform a wide range of light work, a person must be able to perform both sedentary and light work. Plaintiff argues that he is limited in his ability to perform sedentary work by his inability to sit for more than three hours at a time.

Defendant contends, in response, that the ALJ was under no obligation to adopt Dr. Blevins's opinion, especially where it was inconsistent with his own physical examination findings. Defendant also argues that the ALJ properly adopted a state agency consultant's opinion that Plaintiff was capable of performing a reduced range of light work, because this consultant's opinion was more consistent with the evidence in the record. The consultant noted, in her assessment, that Dr. Blevins's opinion was "too restrictive for the objective findings" and in consideration of Plaintiff's activities of daily living [Doc. 20 at Page ID # 751 (citing Tr. 457)].

As discussed above, with regard to Plaintiff's claims pertaining to the ALJ's treatment of Dr. Bilbrey's opinion, the opinion of a non-treating physician is not entitled to any specific weight. The ALJ's decision makes it clear that the ALJ considered Dr. Blevins's opinion and assessment of Plaintiff's physical limitations before the ALJ discounted the opinion to adopt the state agency consultant's opinion, which was more consistent with the objective and clinical evidence of the record and more consistent with Plaintiff's daily activities. The ALJ also specifically noted that none of Plaintiff's treating physicians opined that Plaintiff was disabled due to physical impairments. While the ALJ did not have to provide reasons for discounting Dr. Blevins's opinion, as Dr. Blevins was not a treating physician, these reasons show that the ALJ's RFC determination, including the decision not to include the limitations from Dr. Blevins's opinion, is supported by substantial evidence.

For these reasons, I **FIND** that the ALJ properly considered and discounted Dr. Blevins's opinion in making the RFC determination.

### C. Reliance on the Grids

Plaintiff next argues that the ALJ erred by failing to call a VE to testify at the hearing regarding Plaintiff's non-exertional impairments and their limitations on his ability to perform work. Specifically, Plaintiff contends that the ALJ erred by relying on a Grids rule for light work by making a blanket statement that Plaintiff's "'additional limitations have little or no effect on the occupational base of unskilled light work.'" [Doc. 22-2 at Page ID # 792 (quoting Tr. 47)]. Plaintiff contends that the ALJ cited no authority for finding that the additional limitations included in the RFC determination would have little or no effect on the occupational base for unskilled light work. Plaintiff contends it was error for the ALJ to rely upon the Grids because Plaintiff's RFC included mental limitations, manipulative limitations, and environmental limitations. Plaintiff contends that because of these non-exertional limitations, the ALJ erred by failing to call a VE to testify regarding Plaintiff's ability to work.

In response, Defendant contends the ALJ properly relied upon the Grids to provide a framework for the decision-making process. Defendant cites to a variety of sections from the Code of Federal Regulations in support of its contention. Defendant contends that the non-exertional limitations included in the RFC determination—occasional overhead reaching with the left arm, no concentrated exposure to environmental factors, simple tasks, casual and infrequent contact with coworkers and the public, direct and non-confrontational supervision, and infrequent and gradually introduced workplace changes—were properly found to have little or no effect on the occupational base of unskilled light work by the ALJ. Because Defendant states that the limitations would not have precluded Plaintiff from performing the range of light work encompassed by the Grids, Defendant contends that the ALJ properly used the Grids as a framework to find Plaintiff not disabled.

It is well established that if a claimant can perform the full range of any given exertional level of work (e.g., sedentary, light, or medium work), the Commissioner may meet his burden of establishing no disability by relying on the Grids. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981) (to use the Grids, the claimant's abilities must "precisely coincide" with the categories used by the Grids). But reliance on the Grids is improper when the claimant's ability to perform the full range of occupations at a particular exertional level is "significantly limit[ed]" by impairments not accounted for in the Grids. *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987). If the claimant's occupational base is "eroded" in this manner, the Grids may be used only as a "framework" for a decision, and the ALJ must find other evidence (for example, a VE's testimony) that a person with the claimant's limitations can perform other specific jobs existing in significant numbers. SSR 96-9p, 1996 WL 374185 (July 2, 1996); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008). If there is additional "reliable evidence of some kind that the claimant's nonexertional limitations do not significantly limit the range of work permitted by his exertional limitations," the Grids may be applied notwithstanding the existence of non-exertional limitations. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) (citations omitted). "'[B]efore reaching the conclusion that the grid will not be applied because [of the alleged] nonexertional limitations, those limitations must be severe enough to restrict a full range of gainful employment at the designated level.'" *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 670 (6th Cir. 2009) (alteration in original) (quoting *Mullins v. Sec'y of Health & Human Servs.*, 836 F.2d 980, 985 (6th Cir. 1987)). Thus, the question is "whether there is substantial evidence in the record to support the ALJ's determination that claimant's nonexertional limitations were not 'significant' in that they did not have an effect on the occupational base of unskilled work at

all exertional levels. If the nonexertional limitations were not significant, reliance on the Grids was appropriate." *Collins*, 357 F. App'x at 670.

At step two of her analysis, the ALJ found that Plaintiff's severe impairments consisted of depression, right shoulder pain, organic brain syndrome secondary to suicide attempt (gunshot wound to the head), hypertension, pancreatitis, diabetes mellitus, hepatitis C, obesity, asthma, and anxiety (Tr. 40). In her RFC determination, the ALJ found that Plaintiff was capable of performing light work, but included the additional limitations that Plaintiff could not perform work requiring more than occasional overhead reaching with the left arm; should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; could perform simple, non-detailed tasks; should keep contact with coworkers and the public casual and infrequent; should receive direct and non-confrontational supervision; and should have only infrequent and gradually introduced workplace changes (Tr. 43). The ALJ stated that "the additional limitations have little or no effect on the occupational base of unskilled light work," so "[a] finding of 'not disabled' is therefore appropriate under the framework" of the Grids (Tr. 47).

In authority cited by Defendant, SSR 83-14, 1983 WL 31254, at *6 (Jan. 1, 1983), the Social Security Administration provided guidance about the way that a disability determination based on a combination of exertional and non-exertional impairments should be handled, stating:

> In reaching judgments as to the sufficiency of the remaining exertional job base (approximately 2,500 unskilled medium, light, and sedentary occupations, approximately 1,600 unskilled light and sedentary occupations, and approximately 200 unskilled sedentary occupations), there are three possible situations to consider:
>
> 1. Where it is clear that the additional limitation or restriction has very little effect on the exertional occupational base, the conclusion directed by the appropriate rule in Tables No. 1, 2, or 3 would not be affected.

2. Where it is clear that additional limitations or restrictions have significantly eroded the exertional job base set by the exertional limitations alone, the remaining portion of the job base will guide the decision.

3. Where the adjudicator does not have a clear understanding of the effects of additional limitations on the job base, the services of a VS will be necessary.

While neither party cited this "where it is clear" language, Plaintiff has a RFC comprised of both exertional and non-exertional limitations. Plaintiff's exertional limitations consist of the various limitations which resulted in the ALJ finding that he is capable of performing light work. Plaintiff's non-exertional limitations include, at least, the limitations included by the ALJ in the RFC determination, namely overhead reaching limitations, environmental limitations, task difficulty and complexity limitations, limitations on interactions with other people, and limitations on workplace changes. Thus, Defendant "bears the burden of demonstrating that, notwithstanding the claimant's impairment, he retains the residual functioning capacity to perform specific jobs existing in the national economy." *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).

The ALJ's decision does not make it clear what effect Plaintiff's non-exertional limitations have on the occupational job base for unskilled light work, if any, because the ALJ provided no explanation, rationale, or authority to support her conclusory finding that Plaintiff's non-exertional limitations would "have little or no effect on the occupational base of unskilled light work." (Tr. 47). The ALJ's RFC states that Plaintiff's interaction with the public and coworkers should be "casual and infrequent," and the RFC notes that Plaintiff's supervision should be "direct and non-confrontational"; additionally, the RFC limited Plaintiff to performing "simple, non-detailed tasks," and limited Plaintiff to workplace changes that are "infrequent and gradually introduced." (Tr. 43). Social Security Ruling 85-15 holds that "[t]he basic mental

23

demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985). The ruling makes it clear that "[a] substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." *Id.*

The problem here arises in the ALJ's placement of limitations on Plaintiff's ability to interact with the public, coworkers, and supervisors, as well as on Plaintiff's ability to deal with workplace changes, given the specific language of SSR 85-15. "This circuit has consistently held that 'a limitation regarding a claimant's ability to interact with coworkers and supervisors conflicts with the basic requirements of unskilled work and significantly erodes the occupational base, precluding the use of the grids.'" *Weaver v. Comm'r of Soc. Sec.*, No. 3:13-cv-713-HSM-HBC (E.D. Tenn. Dec. 4, 2014) (quoting *Saturday v. Comm'r of Soc. Sec.*, No. 1:12-CV-2251, 2013 WL 6840355, at *7 (N.D. Ohio Dec. 27, 2013)) (citing *Anthony v. Comm'r of Soc. Sec.*, No. 1:11 CV 1400, 2012 WL 4483790, at *27 (N.D. Ohio Sept. 27, 2012) ("A substantial loss of this ability to deal with supervisors and coworkers 'severely limits the potential occupational base.'"); *Boley v. Astrue*, No. 11-10896, 2012 WL 680393, at *12 (E.D. Mich. Feb. 10, 2012) ("Where an ALJ specifically limits a claimant's ability to interact with co-workers and supervisors, a number of courts have held that such a limitation conflicts with the basic requirements of unskilled work and has the potential to significantly erode the occupational base.")).

Given the consistent holdings of courts in this circuit that limitations on a claimant's ability to interact with coworkers and supervisors—such as those the ALJ included here in

Plaintiff's RFC determination—may significantly erode the occupational base, as well as the ALJ's total lack of any explanation beyond merely stating that Plaintiff's additional limitations have little or no effect, Defendant has failed to show that "it is clear that the additional limitation or restriction has very little effect on the exertional occupational base," as required under the Social Security Administration's own ruling.  SSR 83-14, 1983 WL 31254, at *6 (Jan. 1, 1983).  Because it is unclear from the record what effect Plaintiff's non-exertional limitations would have on the job base for light unskilled work, I **FIND** that it was error for the ALJ to rely upon the Grids in determining that Plaintiff was not disabled.  Accordingly, I **CONCLUDE** Plaintiff's claim must be remanded.

## V.      CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND**[4] that:

1)  Plaintiff's amended motion for summary judgment [Doc. 22] be **GRANTED IN PART** to the extent it seeks remand to the Commissioner and **DENIED IN PART** to the extent it seeks an award of benefits;

2)  The Commissioner's motion for summary judgment [Doc. 19] be **DENIED**.

---

[4] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the district court's order.  *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985).  The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general.  *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

3) The Commissioner's decision denying benefits be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).

s/ *Susan K. Lee*

SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE